73 229
74 457

## YAZOO & MISSISSIPPI VALLEY RAILROAD CO. *v.* HASSIE JONES.

EVIDENCE. *Railroads.    Damage by fire.    Burning off right of way.    Negligence of servant.    Servant's declarations as to origin of fire.    When admissible as part of res gestæ.*

In an action against a railroad company for the damages plaintiff has sustained through the destruction of his property by fire, resulting from the alleged negligence of defendant's servants while engaged in the work of burning off the grass, etc., along its right of way through or contiguous to his land, it is not erroneous to admit testimony as to declarations made by defendant's section foreman, who directed the work, in the nature of admissions that the fire causing the damage originated from the one started by himself for the purpose mentioned, when the declarations were made on the morning of the second day after he did the work, but while the injury was still incomplete, and he was at the scene of it, endeavoring to extinguish the fire and prevent further damage.

FROM the circuit court of Bolivar county.

HON. R. W. WILLIAMSON, Judge.

This was an action brought by Hassie Jones to recover $900 damages of the defendant railway company because of the alleged negligent setting out of fire by its servants. There was a verdict and judgment in favor of the plaintiff for $200.

On Thursday, October —, 1894, the section hands of the company had been engaged in burning off and cleaning out its right of way through or contiguous to the plaintiff's land. One of the plaintiff's witnesses, G. B. Jones, stated that he was passing through plaintiff's field on that day, about 2 o'clock P.M., and saw the section foreman, Heck, burning off the right of way; and further stated that, on the following Friday night, "the fire, spreading from the same fire, caught the fence, and finally got into the cotton pens;" that on Saturday morning he went down and helped to put out the fire; that when he saw the section foreman burning off the right of way on Thursday, he

was putting out the fire as he proceeded with the work; that there was no fire in the woods about there; that he tracked the fire from the railroad to the cotton pens; that the season of the year was very dry; that the section foreman and the others made efforts to put out the fire; and that, in fact, it was all out when he reached the place on Saturday morning, except that there was some cotton that was still burning.

At this point, counsel for the plaintiff asked the witness this question: "What did Mr. Heck tell you about the fire?" The witness was allowed, over defendant's objection, to respond as follows: "I went up to him where he was sitting on the steps. I came from the field. I said there is a big fire here, and he says 'yes,' and I was sort of slow about speaking, and he says, 'I set this fire out Thursday,' I think he said, and he says, 'I had no idea it would spread this way.' He says, 'I left a little burning, a log or stump,' I think he says, and he says, 'I had no idea it would spread this way,' and he says, 'Mr. Powell and I was down at Cleveland working on the yard down there, and Mr. Powell,' I think, the yardmaster he says, he asked him was the fire there, and he says that Mr. Powell said that the fire was all right there, and he says about an hour before sun that, I think he said, one of Mr. Jones' little boys came down there, and told him that the fire was burning up everything there. He said he had no idea that the fire would get out that way. He told me that the way he happened to set fire to it was, that the railroad company had ordered him to burn the right of way off." This witness saw the fire only on Thursday afternoon and Saturday morning, and did not personally see it spread in the interval.

W. P. Jones, another witness for plaintiff, who says he fought the fire nearly all night, was allowed to testify, over defendant's objection, in response to the same question, as follows: "Yes sir, I heard him say something about the fire. He says there was some fire on the railroad, but that he thought he had put it all out, as well as I recollect, except a log or

stump there; and he said he did not think it would break out and do that amount of damage.     I think that is what he said, as well as I can recollect. ''     These declarations also, the witness stated on cross examination, were made on Saturday morning at the scene of the fire.

Willie Wilkerson, who also testified on behalf of the plaintiff, stated that the fire came from the railroad; that Mr. Heck had fired the right of way and had left some fire in the grass and some chunks on the edge of the right of way.     He was picking cotton for the plaintiff when the fire occurred, the day after the right of way was burned.     It was then twenty or thirty feet inside of the field when he first saw it the day after the right of way was burned.     When he first saw the fire, it was in the logs and chunks along the right of way.     He did not see it spread from the logs and chunks or from the right of way to plaintiff's land.     He made no effort to put it out when he saw it in the logs and chunks, because that was not his business, nor did he tell the plaintiff of the fire in the chunks nor think there was any danger from the fire in the chunks.

The section foreman, Heck, testified on behalf of the defendant as follows:  He was burning off the right of way at the time plaintiff's property was burned; that they started to fire the right of way between two and three o'clock, and burned the right of way up and down until late that evening, and, before they went in for the night, they carried water and put out all the fire along the right of way on the west side of the track at this point; that a fire had been burning in the woods, about seventy-five or one hundred feet from the track, about a week or ten days before the fire was set out by him, of the origin of which he knew nothing; that he used all care and diligence to keep the fire from spreading, and never let it run to the edge of the right of way; that they put it out with shovels and with water; that the weather was clear and still, and there was no breeze blowing; that he passed along the pens at sundown and again between ten and twelve o'clock;

that he was running a section and lived up on his place, about two miles from the section house, and had one of the railroad velocipedes and ran up and down from the section house to his home; that his brother was sick that night, and he sent for witness to go to Cleveland to get a doctor; that he made the trip between ten and twelve o'clock and came back; that there was no fire then except on the west side of the woods, about seventy-five feet from the track, which seemed to be some old logs burning along very slowly; that Mrs. Jones' property was on the east side of the track; that the wind sprang up the next morning and blew hard from the northwest—a little more    · west than north—and that the fire in the woods had been burning for a week or ten days before he set out the fire on the right of way.

This was all the testimony, except that of the plaintiff in respect to the value of the property destroyed.

The defendant moved for a new trial, on the grounds that the court below erred in admitting the testimony objected to, and in refusing to grant the peremptory instruction in its favor, which motion being overruled, defendant appealed from the judgment rendered.

*Mayes & Harris*, for the appellant.

There is practically but one question in this case, and that is whether or not the declarations of the section foreman should have been admitted as direct evidence for the plaintiff. Under repeated decisions of this court, the testimony in regard to them was inadmissible. *Memphis & Vicksburg Railroad Co.* v. *Cocke*, 64 Miss., 713; *Illinois Central Railroad Co.* v. *Haynes*, 63 *Ib.*, 485; *Alabama Great Southern Railroad Co.* v. *Forsee*, 63 *Ib.*, 66; *Vicksburg & Meridian Railroad Co.* v. *McGowan*, 62 *Ib.*, 682; *Moore* v. *Chicago, etc., Railroad Co.*, 59 *Ib.*, 243.

All of the declarations were made after the occurrence, and these declarations of the foreman, as testified to by the wit-

nesses, G. B. Jones and W. P. Jones, constitute all the evidence in the case that the defendant was responsible for the fire; and it will be observed that the plaintiff's evidence corroborates what the section boss testified to touching his care in the matter. If these declarations are taken from the record, there is nothing to sustain a conclusion of defendant's liability. But, even conceding that the fire spread from the right of way, no negligence was shown. The railroad company had a right to burn off its right of way, and due care was exercised by its servant in doing the work. The spreading of the fire may have been owing to the wind that arose during the night, against which he had used every precaution. Before leaving his work for the night, he had carefully put out all that he could find.

The defendant was entitled to go to the jury unembarrassed by the testimony in regard to the foreman's declarations.

*Brame & Alexander*, for the appellee.

The declarations of the foreman, Heck, were made in the presence of the witnesses who testified to them, at the scene of the fire, on Saturday morning, while the fire was still burning, and he was endeavoring to arrest it. They were not made at a casual meeting after the occurrence, but *dum fervet opus*. He then said: "I set this fire out Thursday." This was important as indicating the origin of the fire, for he does not say that or the other fire, but "this" fire then burning was set out by him.

The tendency of recent decisions is to extend, rather than to narrow the scope of the doctrine of *res gestæ*. *Insurance Co.* v. *Mosely*, 8 Wall., 397. Statements are admissible as *res gestæ* where the subsequent declaration and the main fact at issue, taken together, form a continuous transaction. *Leahy* v. *Railroad Co.*, 97 Mo., 165.

Where the acts of an agent will bind his principal, his statements and admission will bind, if made at the same time and so that they constitute a part of the transaction. 1 Rice on

Ev., 385. The same author adds: "The constant tendency is to admit all evidence that can elucidate or unravel the mysticism of any transaction." Starke defines *res gestæ* as "the surrounding facts of a transaction." If there be connecting circumstances, a declaration may, even at a month's interval, form a part of the *res gestæ*. *Ridley* ·v. *Gyde*, 9 Bing., 349; *Ward* v. *White*, 19 Am. St. R., 887.

We think the cases cited by the appellant are not applicable. *Railroad* v. *Cocke*, 64 Miss., 713, merely holds that the declaration of an agent is incompetent to·show the agency. In *Railroad* v. *Haynes*, 63 Miss., 485, testimony of a conversation between the witnesses and the conductor of a different train from that on which the property for which suit was brought was shipped, was admitted. This was obviously error. In *Forsee* v. *Railroad Co.*, 63 Miss., 66, the statement of the plaintiff, made by a ticket agent the day after plaintiff was injured, was held incompetent. In *Railroad Co.* v. *McGowan*, 62 Miss., 682, it was held that the statement of an engineer, "made some time after the occurrence," to this effect, "How could a drunken man see a drunken man?" was incompetent. The court did not consider whether the declaration was part of the *res gestæ* or not. Of course, it could not have been seriously contended that it was. The injury had been done. Nothing was then happening to contribute to that injury. The engineer was not then at the scene of the accident. He merely purported to throw light on a past transaction. In making the declaration, he was not in any sense doing the thing which caused or contributed to the injury. In *Moore* v. *Railroad Co.*, 59 Miss., 243, the admission of a conductor, made days after a passenger was injured, that he kicked him off the train, was held not part of the *res gestæ*.

The foregoing review of the cases relied on show how widely different they are from the case here. This case is more like *Railroad* v. *Ironstine*, 64 Miss., 834, where it was held competent to prove the statement of a baggage agent, made the day

after a fire which burned plaintiff's baggage, as to how the fire originated. But this case is much stronger in favor of the admissibility of the evidence than that, for in that case the fire had been extinguished a whole day, and the injury had all been done, but as Walmsley was the person in charge of the baggage, and the proper person to make explanations, and was at his post in the discharge of his duty at the time, his statement was held a part of the *res gestæ.* How much more competent would it have been if the fire had not been all extinguished, and he was, when the statement was made, assisting in putting it out?

WOODS, J., delivered the opinion of the court.

It is assigned for error that the court below erred in overruling the appellant's objection to the introduction of the evidence of the witnesses, G. B. Jones and W. P. Jones, containing certain statements by the section master, Heck, touching the origin of the fire, and of his connection therewith. The assignment is not maintainable.

The fire was set on the right of way on Thursday afternoon, and the statements of Heck were made to these witnesses on Saturday morning following; but at that time, Saturday morning, the injury to appellee's property was not complete, for it is clear that the seed cotton was then burning, and Heck's statements were a part of the *res gestæ.*

But, independently of this, the evidence clearly shows that the fire which damaged appellee spread from that set out by the section master and his hands on the railroad's right of way. If the evidence objected to had been excluded, still no other result than that reached could have followed.

*Affirmed.*